Howell, J.
The plaintiff sues to recover the penalties stipulated in two charter parties for the violation thereof. The defense is a general denial.' Two vessels were chartered by the plaintiff to the defendants “for voyages from the ports of Ruatan and Utilla to New Orleans, until the first day of June, 1871, including any voyage which may have commenced on or previous to that day.’' The charterers were to furnish the said vessels with cargoes of fruit, or money to purchase the same; the freight was to be paid a part in advance, and the balance on arrival in New Orleans. The penalty in the case of one vessel was fixed at $750, and of the other at $700. One of the vessels, the brig Ruatan, was at the date of the contracts (which were made in New Orleans), in the port of Grand Cayman ; the other, the schooner Lizzie Lina, in New Orleans. Three voyages were made by each of the vessels, the defendants in New Orleans advancing the funds to purchase the cargoes. On the twentieth May, 1871, the brig was ready to leave New Orleans to make the fourth voyage, and the captain called on J. Macheca & Co., with and through whom he had previously transacted all matters under the charter parties, notifying them in writing of his readiness to proceed to make the voyage, and demanding the funds necessary to procure the cargo. Macheca & Co. answered that their associates would not allow the vessel to go out; they agreed to pay their portion if the owner would not sue, and said they had advanced for the others on the former voyages and had not been reimbursed. The other parties were aware that the brig was ready and awaiting advances. The schooner was ready on the twenty-second May, and the plaintiff (the captain thereof) called on Macheca & Co. in relation to both vessels, and was told that the charterers were losing money and proposed to compromise by keeping one vessel, if released from the other. Nothing was effected between the parties, and on the thirty-first May a formal demand was made of each of the defendants to comply with the charters, to which they answered in writing that they were “ready *177 to comply with the charter party.” On the next day they were called on for the balance of freight due on the last voyage, and for the money to purchase the next cargo. The freight was paid, but the cargo money was refused on the ground that the charter was abandoned. It is contended by the defendants that they were not legally put in default, and that if they were it was too late, as it was then impossible to begin a voyage from Euatan to New Orleans.
As to the brig Euatan, we think the defendants were put in default by the written demand of the captain on twentieth May, and that the evidence shows that she could have gone to Euatan previous to the first of June. But, as to the schooner Lizzie Lina, there was no default until the thirty-first of May, the day on which the charter was to expire. By article 1911, E. C. C. No. 2, the debtor is put in default either by the commencement of a suit, by a demand in writing, by a protest made by a notary public, or by a verbal requisition made in the presence of two witnesses.
There is no proof that either of the modes was observed in regard to the last named vessel, until the day the contract expired, when it was impossible for the vessel to go to Euatan to commence a voyage on or previous to the first day of June, according to the terms of the contract. The defendants bound themselves jointly and in solido.
It is therefore ordered that the judgment appealed from be reversed, and that the plaintiffs recover oí the defendants in solido the sum of $750, with legal interest from the first day of June, 1871, and costs.